Janet C. DAWSON, in her own right and as personal representative for the Estate of Peter W. Dawson, Deceased, Plaintiff,

v.

COMPAGNIE DES BAUXITES DE GUINEE, a Delaware corporation, Defendant.

Janet C. DAWSON, in her own right and as personal representative for the Estate of Peter W. Dawson, Deceased, Plaintiff,

v.

HALCO (MINING) INC., a Delaware corporation, Defendant.

Civ. A. Nos. 82–407–JLL, 82–426–JLL.

United States District Court,
D. Delaware.

Jan. 5, 1984.

Walter L. Pepperman, II and Eric C. Howard of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Wayne N. Elliott of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants.

## OPINION

LATCHUM, Senior District Judge.

These two civil actions based on diversity of citizenship [1] seek to recover monetary damages for wrongful death and personal injuries arising out of a motor vehicle accident which occurred on July 12, 1980, in the Boke region of the Republic of Guinea in West Africa.[2]

The plaintiff in both actions is Janet C. Dawson, a citizen and presently a resident of Great Britain, who sues as the personal representative of the estate of her late husband, Peter ("Mr. Dawson"), who died as a result of injuries sustained in the accident, and in her own behalf for injuries she also sustained.

1. Jurisdiction is alleged to exist in both actions by virtue of 28 U.S.C. § 1332 in that the plaintiff is a citizen of Great Britain, the defendants are Delaware corporations and the amount in controversy exceeds $10,000. (Docket Item ["D.I."] 47 in C.A. 82–407 & D.I. 39 in C.A. 82–426.)

2. *Id.*

In the first suit filed on June 24, 1982, plaintiff named Compagnie Des Bauxites De Guinee ("CBG"), a Delaware corporation, as the sole defendant.[3] The second action filed on July 7, 1982, named Halco (Mining) Inc., a Delaware corporation, as the only defendant.[4]

CBG is a company engaged in the mining, processing and shipping of bauxite in the Republic of Guinea and is 49% owned by the Guinean government and 51% owned by Halco. Halco is a closely-held Delaware corporation whose stock is 41% owned by aluminum producing companies incorporated in the United States and 59% owned by aluminum producers incorporated in foreign countries.[5]

In virtually identical amended complaints filed in the two actions, plaintiff alleges that the Dawsons were passengers in a Land Rover, owned by the defendants and being operated by Saliou Diallo ("Diallo"), a Guinean national and an employee of defendants, and were proceeding on the main road from Boke to Conakry, Guinea, when the Land Rover overturned. The amended complaints further allege that Diallo's negligent driving caused the accident and that the defendants are liable to plaintiff for damages based on the theory of *respondeat superior* because Diallo was acting within the scope of defendants' employment at the time of the accident.[6]

Each defendant has answered denying that Diallo was its employee[7] and has moved to dismiss the actions on the ground of *forum non conveniens.*[8] The Court consolidated the two cases for the purpose of considering defendants' *forum non conveniens* dismissal motions.[9]

## I. BACKGROUND FACTS

Mr. and Mrs. Dawson were British citizens and resided in Great Britain prior to April, 1980.[10] Mr. Dawson was employed as a licensed first class river pilot with the Liverpool Pilotage Association.[11] In April 1980, Mr. Dawson accepted employment with the Office D'Amermanagement de Boke ("OFAB") as a River Pilot moving barges loaded with bauxite at the Port of Kamsar, Guinea.[12] OFAB is an entity wholly-owned by the Guinean government which provides services to CBG, such as operating ports, railroads, part of a city, a hospital, etc., in connection with the transportation of bauxite from the mining area to various customers.[13]

When Mr. Dawson accepted his position with OFAB, he and Mrs. Dawson moved their residence to Guinea in order to fulfill his employment contract with OFAB.[14] On July 12, 1980, plaintiff and her husband were passengers in a Land Rover which was traveling from Boke to Conakry in Guinea.[15] The Land Rover overturned causing injuries to the plaintiff and her husband; Mr. Dawson died the following day.[16] Saliou Diallo, a Guinean national, was operating the Land Rover when it

3. D.I. 1 in C.A. 82–407.

4. D.I. 1 in C.A. 82–426.

5. D.I. 15, Ex.; D.I. 65, p. A–29 in C.A. 82–407.

6. D.I. 47 in C.A. 82–407; D.I. 39 in C.A. 82–426.

7. D.I. 48 in C.A. 82–407; D.I. 40 in C.A. 82–426.

8. D.I. 11 in C.A. 82–407; D.I. 9 in C.A. 82–426.

9. The parties have supported their respective positions by affidavits, answers to interrogatories, a deposition and other material which the Court has considered in ruling upon the defendants' dismissal motions. *See Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 531, 67 S.Ct. 828, 835, 91 L.Ed. 1067 (1947); *Vanity Fair Mills v. T.*

*Eaton Co.,* 234 F.2d 633, 645 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956).

10. D.I. 47, ¶¶ 1 & 5; all remaining D.I. are found in C.A. No. 82–407.

11. D.I. 47, ¶ 5.

12. *Id.* ¶ 6; D.I. 33, p. 34.

13. D.I. 33, p. 32.

14. D.I. 47, ¶ 7.

15. *Id.* ¶ 8.

16. *Id.* ¶ 11.

overturned.[17] At the time, he was driving the vehicle for the Kamsar Recreation Committee ("KSRC"), a Guinean social club whose dues paying members were expatriate employees of CBG, OFAB and other contracting companies.[18] The Land Rover driven by Diallo was made available to KSRC by CBG.[19] Plaintiff in the respective complaints alleges that Diallo was employed by CBG, in C.A. 82–407, and by Halco, in C.A. 82–426.[20]

The Guinean Police investigated the accident.[21] All of the witnesses to the accident are Guinean residents and all the passengers in the Land Rover, except for Mr. & Mrs. Dawson, were Guinean nationals.[22] The only connection that the State of Delaware has with this accident is that CBG and Halco are incorporated in Delaware.

Additional facts pertinent to the pending motions to dismiss are set forth in the Court's discussion of the factors relevant to a *forum non conveniens* determination.

## II. APPLICABLE STANDARDS

■ Under the doctrine of *forum non conveniens*, "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The doctrine presupposes the existence of at least two forums in which the action could have been brought and it furnishes criteria for making a choice between them. *Id.* at 506–507, 67 S.Ct. at 842. Where two federal forums are available, 28 U.S.C. § 1404(a) permits the transfer of a case from one federal district court to another on *forum non conveniens* grounds; but where the other available forum is a foreign jurisdiction, the traditional *forum non conveniens* remedy of dismissal is appropriate. *DeMateos*

*v. Texaco, Inc.*, 562 F.2d 895, 899 (3d Cir. 1977); *Dahl v. United Technologies Corp.*, 472 F.Supp. 696, 698 (D.Del.1979), *aff'd*, 632 F.2d 1027 (3d Cir.1980).

### A. Adequate Alternate Forum

The initial question in this case is whether the Republic of Guinea is a suitable alternative forum. The Supreme Court has given guidance for this determination when it stated in *Piper Aircraft v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981):

> At the outset of any *forum non conveniens* inquiry, the Court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. *Gilbert*, 330 U.S. at 506–507 [67 S.Ct. at 842]. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of dispute.

454 U.S. at 254 n. 22, 102 S.Ct. at 265.

■ First, there is absolutely no question that CBG, although incorporated in Delaware, is amenable to process in the Republic of Guinea because its primary business activities of mining, processing and shipping bauxite is centered in that country.[23] The same, however, cannot be said of Halco; other than owning 51% of CBG's stock, it apparently does not have a place of business in the Republic of Guinea.[24] This fact, nevertheless, is not an insurmountable bar to dismissal of the Halco action because the Court can condition a

---

**17.** D.I. 33, p. 59.

**18.** *Id.* pp. 42–43; 58–59.

**19.** *Id.* p. 41.

**20.** This allegation is disputed. *See* D.I. 33, pp. 42–44; 52–56; 60.

**21.** D.I. 19, ¶ 7; D.I. 33, p. 65.

**22.** D.I. 19, ¶ 6.

**23.** D.I. 33, p. 19 in C.A. 82–426.

**24.** *Id.* at 20.

dismissal upon Halco agreeing to submit to the jurisdiction of the Guinean courts if plaintiff institutes suit there. *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 242, 102 S.Ct. at 258; *Abiaad v. General Motors Corp.*, 538 F.Supp. 537, 540, 545 (E.D.Pa.), *aff'd*, 696 F.2d 980 (3d Cir.1982).

Furthermore, the record reveals that the Courts of the Republic of Guinea would provide a forum for the remedy which the plaintiff seeks.[25] In Guinea not only does a person have a right to bring a civil suit for injuries resulting from an automobile accident, but in fact this often happens and judgments have been awarded in such cases.[26] This Court is unable to conclude based on the credible evidence presented that the plaintiff will be provided with a remedy so clearly inadequate or unsatisfactory as to be no remedy at all. *Piper Aircraft Co. v. Reyno, supra* 454 U.S. at 254, 102 S.Ct. at 265. Additionally, any action brought by the plaintiff in Guinea will not be barred by a statute of limitations until ten years from the date of the accident.[27] *Cf. In Re Air Crash Disaster Near Bombay*, 531 F.Supp. 1175 (W.D. Wash.1982).

Plaintiff contends that the Republic of Guinea, since gaining its independence from France over 25 years ago, is a "Marxist-Communist state with a one-party system ruled over by a dictator ever since," that its legal system is subordinate to politics, that its bar has been nationalized, that it has no jury system as known in this country, that there would be difficulties in converting Guinean currency to British pounds if a judgment were obtained, that trial would take place at an inconvenient location, and that it would be difficult, if not impossible, to receive a fair trial against the partially owned CBG and its co-owner Halco.[28] These broadbased contentions of the plaintiff rely upon affidavits of herself,[29] her English solicitor,[30] a British psychiatrist,[31] a river pilot, David Devey,[32] and two experts, Dr. Francis G. Snyder[33] and Professor Morris Wolff.[34] The Court finds their affidavits unpersuasive in establishing that plaintiff would be left without a legal remedy in the Republic of Guinea. With respect to Dr. Snyder, it does not appear that he has ever entered, been present in, or visited the Republic of Guinea. Likewise, Professor Wolff lacks firsthand experience in the Guinean legal system and has made only one short stopover at Conakry Airport during a flight from Abidjan on the Ivory Coast of Africa.

Opposed to their evidence is the evidence presented by three members of the Guinea bar: Professor Joseph L. Dejian,[35] Koly Mamady Kourouma[36] and Madame Rosine Martin.[37] All of these persons have firsthand knowledge of the legal situation in the Republic of Guinea and their testimony has far greater weight than that presented by the plaintiff.

The Republic of Guinea is not a "Marxist-Communist state"; rather, it is a country, like many other Third World countries, which is governed by one party. Nevertheless, since Guinean independence in 1958, Guinea and the United States have had continuous diplomatic relations, and except for short transitional periods, each country has had resident ambassadors at embassies located in the other country.[38] Commercial relations between the two countries have

25. D.I. 15, Ex.

26. D.I. 33, pp. 101–105 in C.A. 82–426.

27. D.I. 15, Ex., p. 2, ¶ 6.

28. D.I. 50, pp. 5–6.

29. D.I. 51.

30. D.I. 54.

31. D.I. 53.

32. D.I. 52.

33. D.I. 55.

34. D.I. 56.

35. D.I. 65, pp. A–1 to A–13.

36. D.I. 15, Ex.; D.I. 33 in C.A. 82–426.

37. D.I. 65, pp. A–18 to A–27.

38. *Id.* p. A–20.

existed without interruption since 1958. The Republic of Guinea is a member of the United Nations, the World Bank, and other similar organizations affiliated with the United Nations.[39]

Moreover, the Guinean legal system does not fit the descriptions of plaintiff's experts. Following independence from France, Guinea has continued to retain the French civil law system and the plaintiff would have a right to bring suit to recover the remedy which she seeks here.[40]

While there is no doubt that the plaintiff has a strong distaste for the social/political situation of the Republic of Guinea, that distaste is of no consequence to the present dismissal motion because the Court has found that the Republic of Guinea will afford a suitable alternate forum in which the plaintiff may litigate her claims. The fact that the civil legal system of Guinea is not a duplicate of that which exists in Delaware is no reason to find that dismissal is inappropriate. Less favorable law and chance of recovery does by itself bar dismissal of these actions. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254, 102 S.Ct. at 265. Thus, despite plaintiff's dislike of Guinea's social/political situation, it appears that Guinean courts will permit litigation of the subject matter in dispute and hence is unlike the situation found by this Court in *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 78 F.R.D. 445 (D.Del.1978).

### B. *Plaintiff's Choice of Forum*

■ Before undertaking a *Gulf Oil v. Gilbert* analysis, the Court must consider plaintiff's choice of Delaware as the forum for litigating her claims. Ordinarily, a strong presumption exists in favor of a plaintiff's choice of forum which may be overcome only when private and public interest factors clearly point towards trial in the alternative forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. But it is now quite clear that when a plaintiff is a foreign citizen and is not suing in his home forum, the presumption of such

plaintiff's convenience is less reasonable and his choice deserves less deference. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 255–56, 102 S.Ct. at 265–266. In the present actions, the plaintiff is a British resident and citizen who has never had any connection with Delaware and accordingly her choice of forum in Delaware has less significance in determining whether to keep this litigation in this Court.

### III. ANALYSIS

■ Once the Court has determined that there is an alternate forum available, it must then analyze all private and public interest factors referred to in *Gulf Oil Corp. v. Gilbert* in order to determine whether the doctrine of *forum non conveniens* should be applied. The Supreme Court has summarized the *Gulf Oil* balancing test as follows:

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft v. Reyno*, 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6 (quoting *Gulf Oil v. Gilbert, supra*, 330 U.S. at 508–509, 67 S.Ct. at 843) (citations omitted).

---

**39.** *Id.*

**40.** D.I. 65, p. A–8; D.I. 33, pp. 101–102; 131–32 in C.A. 82–426.

## A. *Private Interests*

Focusing first on the private interests, the Court finds that the interest of the litigants in these cases would not be served by trial in this Court.

No evidence, documentary or testimonial, is located in Delaware. All witnesses, except for the plaintiff, and all evidence concerning the accident itself and the relevant events leading up to, and following, are in the Republic of Guinea. Those witnesses are Diallo, the driver of the overturned vehicle, and the passengers (other than the plaintiff and her husband), all of whom are Guinean residents and nationals. The repair records of the Land Rover involved are in Guinea. The Guinean police investigated the accident and made a report thereon. CBG also compiled an accident report which is in its main office in Guinea. The employment records relating to Diallo's employment, a prime issue in this case, are also all located in Guinea. Possible additional witnesses would include medical personnel who examined and treated plaintiff and her husband before his death and these witnesses as well as any medical documents are in Guinea.

Certainly it would be impractical, if not impossible and extremely expensive, for all these Guinean witnesses and evidence to be brought to Delaware for a jury trial, assuming that the witnesses were willing to make the trip. If these witnesses were unwilling to come halfway around the world for trial, they could not be compelled to do so by process issued by this Court. Some of the disputed factual issues involved are so crucial to the outcome of these cases that a jury trial without live witnesses is difficult to imagine.

Plaintiff argues that the Guinean police report and the CBG accident report which have been translated into French could be used in place of live witnesses. The defendants, however, have not admitted the accuracy of either of these reports, which are hearsay and would be subject to challenge.

Another consideration is the undoubted burden that the language barrier would create for a trial in Delaware. While French is spoken by many Guineans, this is not true with all. For example, Diallo, the driver of the Land Rover, does not speak French but speaks in his native Foulah language. This Court is not equipped to supply interpreters for native Guinean languages. On the other hand, the Guinean Courts regularly take testimony in nine languages, including Foulah.[41]

These actions raise the issue of the requisite care required of a vehicle operator traveling on the roads located in the Boke and Coyah regions of Guinea. It would be practically impossible for Delaware jurors to comprehend and visualize the type of road involved, the nature of the terrain, the possible hazards and distractions that might confront an average driver. Only persons living in and familiar with the area, its terrain and possible pitfalls could evaluate plaintiff's negligence claims. In the absence of a view (an impossible scenario in this case), Delaware jurors would have no conception sufficient to enable them to weigh such evidence fairly.

As inconveniences to her, plaintiff contends that she is physically and psychologically unable to cope with another trip to Guinea to litigate her claims. She also asserts that travel entry restrictions, the deposit for bringing suit, language difficulties and the possibility of not being able to collect on a judgment pose added problems to litigating outside of Delaware. This Court finds these matters do not out-balance the other private interest factors discussed above.

It may very well be that the plaintiff does not wish to return to Guinea. Nevertheless, it must be remembered that the plaintiff and her husband, who were citizens of Great Britain, became residents of the Republic of Guinea in April, 1980, and were so at the time of the accident. The plaintiff and her husband moved there to

---

**41.** D.I. 33, pp. 112–13 in C.A. 82–426.

enable her husband to engage in lucrative employment in that country.[42] As residents of Guinea they, of course, became subject to its civil and criminal laws.

Concerning Guinean currency, the credible evidence indicates that a foreign citizen in possession of Guinean currency may through a Bank for proper purposes convert the same to foreign currency and remove it from the country.[43] Moreover, while Guinean Courts render monetary awards in Guinean currency, a judge at the same time is authorized to order the Guinean currency award converted to plaintiff's home country when the court is convinced that the plaintiff has no further business in Guinea.[44]

While a cash deposit is required by a foreign plaintiff instituting suit in Guinea, this procedure is common to all civil law countries and merely serves to guarantee court costs in the event plaintiff loses his case [45] and is commensurate with filing fees required in most courts in the United States. But because the court in Coyah, which has jurisdiction of the place where the accident happened,[46] has recognized and reserved plaintiff's rights to damages in litigation against Diallo, she may not be under any obligation to make a deposit for bringing suit there.[47]

There are travel restrictions in Guinea. A foreigner is required to obtain visas but they are very rarely denied foreigners [48] and foreigners must obtain written permission to travel inside Guinea which is obtained from the regional commandant or governor.[49] The plaintiff and her husband were subject to these restrictions while they were residents of Guinea and apparently they had no difficulty with traveling there.

### B. *Public Interests*

Turning to a consideration of public factors in balancing the relative convenience of the two alternate forums, the Court concludes that the public interest would be better served by a trial in Republic of Guinea rather than in Delaware.

These two actions, for which jury trials have been demanded, were brought for injuries and wrongful death of British citizens, who were injured or died as a result of a motor vehicle accident in the Republic of Guinea. The interests of Republic of Guinea to this litigation are obvious. In contrast, the only conceivable relation Delaware has to the litigation is the fact that both defendants are incorporated here.

More importantly, it clearly appears that all of plaintiff's claims will be governed by the substantive law of Guinea. Since jurisdiction in this Court is based on diversity of citizenship, 28 U.S.C. § 1332, this Court must apply the choice of law rules of Delaware, the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). All three counts of the amended complaints sound in tort based on the negligence of defendants' alleged employee. Delaware's choice of law rule for tort claims would require this Court to apply the substantive law of the place where the tort arose to the rights of the parties. *Friday v. Smoot*, 211 A.2d 594, 595 (Del.Sup. 1965). The burden placed on this Court to determine Guinean law would be overpowering.

Plaintiff argues that there is no objectively identifiable or confirmable Guinean law from sources in the United States and therefore the Court should apply the law of Delaware. The evidence, however, shows that there is a body of identifiable legal material on Guinean law available in the

---

**42.** D.I. 65, p. A–15, ¶ 4.

**43.** D.I. 33, pp. 118–20.

**44.** *Id.* pp. 120–21.

**45.** *Id.* p. 111; 138.

**46.** *Id.* p. 105.

**47.** D.I. 65, pp. A–9 to A–10.

**48.** D.I. 33, p. 126; 117–18 in C.A. 82–426.

**49.** *Id.* pp. 116–17.

**28**

Library of Congress.[50] This being so this Court anticipates it would have great difficulty in applying Guinean law in this case. It would be far better to have the courts of Guinea apply their own law with which they are most familiar.

Finally, it would be unfair to burden Delaware citizens with jury duty in these cases when Delaware has so little connection with this controversy which is chiefly local in nature and completely centered in West Africa.

In sum, this Court perceives no reason why these cases, which call for the application of Guinean law to claims of British citizens who were residents of Guinea when they were injured in a motor vehicle accident that occurred in that country, should be heard and decided by a judge and jury sitting in the District of Delaware. *Abiaad v. General Motors Corp.*, 538 F.Supp. 537 (E.D.Pa.), *aff'd*, 696 F.2d 980 (3d Cir.1982); *Dahl v. United Technologies Corp.*, 472 F.Supp. 696 (D.Del.1979), *aff'd*, 632 F.2d 1027 (3d Cir.1980).

Therefore, Civil Action No. 82–407 against Compagnie Des Bauxites De Guinee will be dismissed unconditionally and Civil Action No. 82–426 against Halco (Mining) Inc., will be dismissed on appropriate conditions [51] on the ground of *forum non conveniens*.

An order will be so entered.

---

**50.** D.I. 65, pp. A–8 to A–9.

**51.** Because it is unclear whether Halco (Mining) Inc., is amenable to process in the Republic of Guinea, conditions must be attached to the Dismissal of plaintiff's Civil Action No. 82–426. The defendant must agree to submit to the jurisdiction of the Guinean courts in any civil action timely instituted there against it on the claims alleged herein. In addition, because there is a slight possibility there may be evidence now unknown located in the United States under Halco's control which must be made available

to plaintiff for a fair adjudication, the defendant must agree to make available at its own expense any such documents, witnesses or other evidence which may be needed for a fair adjudication in the Republic of Guinea. Finally, so that any judgment rendered against Halco by the Guinean courts has effect, Halco must agree to pay any judgment so entered on plaintiff's claims alleged here. The defendant will be required to certify to this Court its consent within a limited period of time.