Creighton E. MILLER, et al., Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY NORWAY, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: June 24, 1986.
Decided: May 1, 1987.
Filed: May 4, 1987.

William T. Quillen (argued), Peter M. Sieglaff and Kent A. Jordan of Potter Anderson & Corroon, Wilmington, and Leonard C. Jaques of The Jaques Admiralty Law Firm, P.C., Detroit, Mich., of counsel, for plaintiffs.

Bruce M. Stargatt (argued), Frederick W. Iobst and William D. Johnson of Young, Conaway, Stargatt & Taylor, Wilmington, and Kenneth E. Rogers and Karen H. Brand of Phillips Petroleum Co., Houston, Tex., of counsel, for defendant.

BABIARZ, Judge.

The Alexander L. Kielland [the Kielland], a semi-submersible drilling rig, capsized in the Norwegian sector of the North Sea on March 27, 1980. Of the 212 people on board, 123 died. The plaintiffs in this action are 72 of the survivors and the administrator of the estates of 95 of the deceased. The defendant here is Phillips Petroleum Company Norway [Phillips Norway] which at the time of the incident was a wholly-owned subsidiary of Phillips Petroleum Company.

Phillips Norway is a Delaware corporation. The parties dispute where the principal place of business of the corporation is, but it appears clear that the board of directors meets and major business decisions are made in Bartlesville, Oklahoma. The day-to-day operations of the company, however, are carried out in Norway.

On July 15, 1976 Phillips Norway entered into a bare boat charter agreement with Stavanger Drilling II A/S [Stavanger Drilling], a Norwegian corporation, on behalf of itself and co-venturers in petroleum operations in the Greater Ekofisk Development [Ekofisk Field] in the Norwegian sector of the North Sea. Under the terms of the charter, Phillips Norway had exclusive dominion and control over the Kielland during the term of the agreement. The Kielland was a Norwegian flag vessel owned by Stavanger Drilling and never was in United States waters. Although it was built in France as a semi-submersible drilling rig, Phillips Norway used the Kielland as an accommodation rig (a "floating hotel") for off-duty workers in connection with the oil and gas operations in the North Sea. At the same time, Phillips Norway, as the bare boat charterer, entered into a personnel and services agreement with Stavanger Drilling by which Stavanger Drilling would man, navigate, operate and maintain the vessel to make it seaworthy, with the full right to direct the details of such operations. Both the charter agreement and the personnel and services agreement were entered into in Norway, both have a clause stating that they are to be governed by Norwegian law, and both were to expire on April 23, 1980.

The Norwegian government and courts have exercised jurisdiction over the scene of the accident. Both the government and the Stavanger, Norway police conducted official investigations into the Kielland's capsizing. It should be noted that neither Stavanger Drilling nor its personnel, nor the designer of the Kielland, nor the builder of the Kielland, nor the government and police investigators, nor the witnesses mentioned in the investigators' reports are within the subpoena power of this Court. Finally, I note that of the 167 plaintiffs only two claim American citizenship as dual nationals and none were domiciliaries of the United States at the time of the accident.

The plaintiffs had previously initiated actions against Phillips Norway in the United States District Court for the Northern District of Ohio. That Court dismissed the actions for lack of personal jurisdiction over Phillips Norway. The Sixth Circuit affirmed on September 17, 1984. The United States Supreme Court denied plaintiffs' petition for a writ of certiorari.

Stavanger Drilling and Phillips Norway have filed a petition in the City Court of Stavanger, Norway for a limitation of their liability pursuant to the provisions of Norway's Limitation of Liability statute. They have given proper notice to all persons as to the initiation of proceedings and have admonished all proper persons to file their claims in that action. A security of approximately forty million U.S. dollars was filed to pay all the claims in the proceedings. Apparently, under the statute, a failure to make a claim in that action will preclude the claimant from filing a claim in any other court or jurisdictions. Phillips Norway has represented to this Court that claims may still be filed in the Norwegian action.

It should also be noted that 202 of the 212 people on board the Kielland have executed general releases in Phillips Norway's favor. These releases provide that they are to be governed by Norwegian law. All who executed such releases were repre-

sented by counsel. Some who have given releases have still filed claims in the Norwegian courts. It is thus clear that the validity of these releases will be decided in whatever forum this case is eventually handled.

This Delaware action was filed on June 10, 1985. Phillips Norway now moves for summary judgment on the grounds of (1) lack of subject matter jurisdiction, and (2) forum non conveniens.

The plaintiffs assert causes of action under the Jones Act, 46 U.S.C. § 688, the Death on the High Seas Act, 46 U.S.C. § 761 et seq. [DOHSA], and general maritime law. The United States Supreme Court has set forth the "choice of law" principles by which a Court is to determine whether it should exercise jurisdiction over Jones Act claims. See *Lauritzen v. Larsen*, 345 U.S. 571, 583–591, 73 S.Ct. 921, 928–932, 97 L.Ed. 1254 (1953). The parties here acknowledge that there is no rational basis for a differentiation of treatment for choice of law purposes with regard to the DOHSA and general maritime law claims. See *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959); *DeMateos v. Texaco, Inc.*, 3d Cir., 562 F.2d 895, 900–01 (1977), *cert. denied* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). Thus, this Court shall consider each cause of action as one for the purpose of applying the "choice of law" principles.[1]

The *Lauritzen* case set out seven factors for consideration in determining jurisdiction. These factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured parties; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. *Lauritzen*, 345 U.S.

at 583–91, 73 S.Ct. at 528–32. In *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court noted that the *Lauritzen* list was not intended as exhaustive and that there may be other factors. The Court specifically listed one additional factor: the location of the shipowner's base of operations. *Rhoditis*, 398 U.S. at 309, 90 S.Ct. at 1734.

■ Jurisdiction will be found to exist only where there are substantial contacts between the facts of the case and the United States. This substantiality is not to be determined by balancing the presence of contacts against the absence of contacts, but rather by using an absolute scale of whether the factors present constitute a substantial contact. *Phillips v. Amoco Trinidad Oil Co.*, 9th Cir., 632 F.2d 82, 86 (1980), *cert. denied sub nom. Romilly v. Amoco Trinidad Oil Co.*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *Moncada v. Lemuria Shipping Corp.*, 2d Cir., 491 F.2d 470, 472, *cert. denied* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974). The *Lauritzen-Rhoditis* choice of law test is not a mechanical one. *Rhoditis*, 398 U.S. at 308, 90 S.Ct. at 1733. The factors are not accorded equal weight, and indeed the weight to be given to a factor will vary depending on the specific factual setting before the Court. *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d at 85. The substantiality of the contacts may not be determined in a vacuum. Rather, they must be evaluated in light of "our self-regarding respect for the relevant interests of foreign nations". *Romero v. International Terminal Operating Co.*, 358 U.S. at 382–83, 79 S.Ct. at 485–86; *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d at 85. To determine the relevant interests of other nations, there must be an evaluation of the

---

1. Phillips Norway argues that the Jones Act would not apply to these plaintiffs in any event because (1) the plaintiffs do not qualify as "seamen" under the meaning of the Act; and (2) Phillips Norway was not their employer, as required by the Act. The statuses of "seamen" and "employee" would normally be questions of fact to be determined by the trier of fact. See *Senko v. LaCrosse Dredging Corp.*, 352 U.S. 370, 373, 77 S.Ct. 415, 417, 1 L.Ed.2d 404 (1957);

*Offshore Co. v. Robison*, 5th Cir., 266 F.2d 769, 779–80 (1959). The issue thus would not be determined at the summary judgment stage unless, based on undisputed facts, reasonable persons could only come to one conclusion. *Cropper v. Rego Distribution Center, Inc.*, D.Del., 542 F.Supp. 1142, 1150 (1982). I need not reach this issue, however, because of my decision that the Jones Act is not the appropriate law to apply in this litigation.

"points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen,* 345 U.S. at 582, 73 S.Ct. at 928. Keeping these guidelines firmly in mind, I now turn to applying the *Lauritzen-Rhoditis* test to the facts before the Court.

■ *Place of the Wrongful Act.* The *Lauritzen* Court placed little emphasis on the location test as a choice of law indicator, noting that "however sufficient for torts ashore, [it] is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen,* 345 U.S. at 583, 73 S.Ct. at 929. While this criticism is accurate with regard to regular commercial sailing vessels, it has been held inapplicable to vessels such as drilling rigs whose location is fixed. See *Chiazor v. Transworld Drilling Co.,* 5th Cir., 648 F.2d 1015, 1019 (1981), *cert. denied* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d at 87. In the present case, the Kielland was used as a stationed accommodation rig. Though moveable, its location at the time of the accident was fixed, and had been so for a substantial period of time. The Kielland was not floating through "varieties of legal authority," as was the ship in *Lauritzen.* Thus, under these facts, the "place of the wrongful act" test should be given more weight. The place of the act was in the Norwegian sector of the North Sea, and thus affords no support for the application of American law in this case.

■ *The Law of the Flag.* The *Lauritzen* Court placed its greatest emphasis on the law of the flag.

Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag. Each state under international law may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it. Nationality is evidenced to the world by the ship's papers and its flag.

*Lauritzen,* 345 U.S. at 584, 73 S.Ct. at 929.

The Keilland operated under the flag of Norway. The plaintiffs suggest that because of the bare boat charter Phillips Norway became the owner *pro hac vice* of the vessel, and the Norwegian flag should therefore be dismissed as merely a flag of convenience. Phillips Norway's status as owner will be discussed with regard to another factor below. Assuming that it was the owner of the Kielland, though does not establish that the Norwegian flag was a flag of convenience. Here there is a company whose day-to-day operations were carried out in Norway, operating a vessel in the Norwegian sector of the North Sea, with the majority of people on board possessing Norwegian citizenship. Possessing a Norwegian flag for such a vessel is certainly more than an attempt by an American shipowner "to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries." *Lauritzen,* 345 U.S. at 587, 73 S.Ct. at 931. Indeed, far from being a flag of convenience, a considerable argument could be made that Norway's flag was the most appropriate flag for the Kielland. This factor, therefore, also affords no support for the application of American law.

*Allegiance or Domicile of the Injured.* Of the 167 plaintiffs here, 165 have neither allegiance nor domicile in the United States. Two of the plaintiffs, however, apparently do possess American citizenship, although neither has a domicile in this country. Additionally, it appears that both possess citizenship in another country as well. It is clear that "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support". *Lauritzen,* 345 U.S. at 586, 73 S.Ct. at 930. While neither plaintiff could claim to be a permanent inhabitant of this country, their American citizenship should not be entirely disregarded. This factor, therefore, constitutes an American contact for two of the 167 plaintiffs.

*Allegiance of the Defendant Shipowner.* This factor is more important in cases of a flag of convenience, when a court must press "beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them." *Lauritzen,* 345 U.S. at 587, 73 S.Ct. at 931. Because it has already been determined that the Norwegian flag in this case was not a flag of convenience, the importance of this factor in the overall determination is lessened. However, to the extent it is important, I note that the legal owner of the Kielland is Stavanger Drilling, a Norwegian corporation.

The plaintiffs suggest that by virtue of the bare boat charter Phillips Norway should be considered the owner *pro hac vice,* and thus that this factor should be decided in favor of the application of American law. American courts have held that when an owner of a vessel gives the entire possession and control of that vessel to a charterer, that charterer is treated for most purposes of admiralty law as the owner, often called the owner *pro hac vice. Reed v. Steamship Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351–52, 10 L.Ed.2d 448 (1963); *Blair v. United States Steel Corp.,* 3d Cir., 444 F.2d 1390, 1391 (1971), *cert. denied* 404 U.S. 1018, 92 S.Ct. 681, 30 L.Ed.2d 666 (1972). Anything short of this complete transfer would result in a time or voyage charter, without creating the owner *pro hac vice* status. *Guzman v. Pichirilo,* 369 U.S. 698, 700, 82 S.Ct. 1095, 1096–97, 8 L.Ed.2d 205 (1962). Phillips Norway argues that because of the personnel and services contract between Phillips Norway and Stavanger Drilling created at the same time as the alleged bare boat charter, the charter arrangement as a whole must be considered as a time or voyage charter. In short, they argue that the complete control given by the bare boat charter was taken away by the personnel and services agreement. Another issue lies in the fact that the charter was formed in Norway, and provides that Norwegian law should govern. Under traditional Delaware choice of law rules, the law of the place with the most significant relationship to the contrac-

tual transaction would apply. See *In Re Asbestos Litigation (Bell),* Del.Super., 517 A.2d 697, 698 (1986). In this case, that would clearly indicate Norwegian law. Thus, the effect of the bare boat charter, and indeed the question of whether the charter constitutes a bare boat charter, would have to be determined under Norwegian rather than American law.

It is not necessary, however, for this Court to probe that deeply into this issue. As noted previously, the *Lauritzen-Rhoditis* test is not a mechanical one, nor is the list of factors meant to be exhaustive. *Rhoditis,* 398 U.S. at 308–09, 90 S.Ct. at 1734. Just as Stavanger Drilling's legal ownership is a factor to be considered, so too the fact that a Delaware corporation was the charterer of the vessel at the time of the accident should not be ignored. The charter of the Kielland by Phillips Norway is thus a factor in favor of the application of American law.

*The Place of Contract.* While this factor is considered significant in contractual actions, it is not normally considered a substantial influence in the choice of law determinations involved in a maritime tort. *Lauritzen,* 345 U.S. at 588–89, 73 S.Ct. at 931–32. It is true that some contracts are involved in this matter, such as the releases executed in Norway by 202 of the 212 people on board the Kielland and the bare boat charter discussed above. While the application of Norwegian law to these contracts is a factor to be considered as part of a forum non conveniens analysis, it is not a factor with regard to the choice of law to be applied to the tortious activity which is the basis of this suit.

*Inaccessibility of the Foreign Forum.* As mentioned earlier, there are on-going proceedings in Norway pertaining to the capsizing of the Kielland. The plaintiffs suggest in essence that that forum is inadequate because the proceedings were instituted by Phillips Norway and because the extent of liability is limited in Norway under Norwegian law. This argument suggests that this Court should engage in an evaluation of Norwegian law, and, if it is found that Norwegian law falls short of

American standards, apply American law. This suggestion

> "is a variety of social jingoism, which presumes that the 'liberal purposes' of American law must be exported to wherever our multinational corporations are permitted to do business. Some of our law, to other nations, may not appear as liberal as the Jones Act appears to us, and extreme applications of such an effort might well result in those nations closing their door to such corporations, to their and our competitive disadvantage."

*DeMateos v. Texaco, Inc.*, 562 F.2d at 902. It is not in the province of this Court in a choice of law analysis "to inquire which law does whom the greater or the lesser good". *Lauritzen*, 345 U.S. at 593, 73 S.Ct. at 934. The plaintiffs also suggest that, because of the general releases executed by many of the plaintiffs, the Norwegian forum would be foreclosed to them. This argument ignores the fact that the validity of those releases would have to be decided here, too, and that Norwegian law would apply, since Delaware applies the law of the place of contract to contractual questions. See *In Re Asbestos Litigation (Bell)*, 517 A.2d at 698. Indeed, defense counsel has represented to this Court that challenges to the validity of the releases have been filed in Norway. Thus, there is an available forum in Norway for the matters that are sought to be brought before this Court.

■ *The Law of the Forum.* The *Lauritzen* Court discusses under this heading whether the mere fact that an American forum has jurisdiction over the parties is sufficient to support the application of American law. It has been held "a denial of due process of law when a state of the Union attempts to draw into control of its law otherwise foreign controversies, on slight convections, because it is a forum state. ... Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable." *Lauritzen*, 345 U.S. at 590–91, 73 S.Ct. at

932. Following the direction of the *Lauritzen* Court, the mere fact that the plaintiffs brought suit here does not constitute a factor in favor of the application of American law. Cf. *Texas City Refining, Inc. v. Grand Bahama Petroleum Co., Ltd.*, Del. Supr., 347 A.2d 657, 658 (1975) (in forum non conveniens analysis, defendant's incorporation in Delaware is not a factor to be considered).

*The Shipowner's Base of Operations.* Phillips Norway is incorporated in Delaware. It holds meetings of the board of directors and makes major business decisions in Oklahoma. The day-to-day operations are carried out in Norway. The United States Supreme Court, in setting out this factor has stated that "the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." *Rhoditis*, 398 U.S. at 310, 90 S.Ct. at 1734–35. The "real nature of the operation" is in its day-to-day operations. The "base of operations" of the charterer of the vessel is in Norway. It is undisputed that the "base of operations" of the legal owner of the Kielland, Stavanger Drilling, is in Norway. This factor, then, does not constitute a substantial contact with the United States.

Viewing all the above factors as a whole, and giving due respect for the relevant interests of the foreign nation, *Romero v. International Terminal Operating Co.*, 358 U.S. at 382–83, 79 S.Ct. at 485–86, this Court concludes that the contacts between this dispute and the United States are not substantial enough to justify the imposition of the American Jones Act, DOHSA, or general maritime law onto this dispute. This is a Norwegian case, and this Court will refrain from engaging in the "social jingoism" of imposing American law "wherever our multinational corporations are permitted to do business." *DeMateos v. Texaco, Inc.*, 562 F.2d at 902.

■ While I have determined under the "choice of law" test that this Court should not assume jurisdiction over the case, it is

nevertheless appropriate that I consider defendant's alternative ground for dismissal on forum non conveniens grounds. See *Koke v. Phillips Petroleum Co.*, 5th Cir., 730 F.2d 211 (1948). The factors to be considered in a forum non conveniens analysis are (1) which law applies; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the possibility of a view of the premises; (5) the pendency or non-pendency of a similar action or actions in another jurisdiction, and (6) all other practical considerations which would make the trial easy, expeditious and inexpensive. *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425, 427 (1967). Several of these factors have already been considered in the *Lauritzen-Rhoditis* test. Indeed, the two tests are so similar that some courts have held that if American law is found to govern, there is no need to apply the forum non conveniens doctrine. See *Koke*, 730 F.2d at 218; *Needham v. Phillips Petroleum Co.*, 10th Cir., 719 F.2d 1481, 1483 (1983); but see *Cruz v. Maritime Co.*, 2d Cir., 702 F.2d 47, 48 (1983). ("[W]hen the Jones Act is applicable ... the District Court must exercise its power to adjudicate, absent some exceptional circumstances such as ... the equitable principle of forum non conveniens."). Having found that American law does not apply, it comes as no great surprise that this Court also concludes that the doctrine of forum non conveniens should apply, and that this case should also be dismissed on that ground.

The first factor asks which law applies. The answer, as given above, is that Norwegian law does. This factor thus favors a Norwegian forum.

The second factor asks about the relative ease of access to proof. Because the accident occurred in the Norwegian sector of the North Sea, it is clear that most if not all of the proof will be more easily accessible in the Norwegian forum.

The third factor asks about the availability of compulsory process for witnesses. This Delaware forum has no ability to issue compulsory process on virtually any of the expected witnesses. While it appears that even the Norwegian court could not reach all the witnesses, it is beyond dispute that a majority of the witnesses are subject to Norwegian process.

The fourth factor concerns the ability to view the premises. In that the "premises" consists of little more than an area of water, the need to view the premises is doubtful. To the extent it is necessary, however, it is more easily done by the Norwegian court.

The fifth factor concerns the pendency of a similar action. As has already been decided under the *Lauritzen-Rhoditis* test, this Court is satisfied that a similar action is pending in Norway, and was begun prior to the institution of this suit.

Finally, we consider all the other practical considerations involved. Because of the ongoing action in the Norwegian court, continuation of this action may lead to inconsistent verdicts and duplication of effort. Also, Phillips Norway is the only potential defendant subject to the jurisdiction of this Court. Any claims which either the plaintiffs or Phillips Norway might have against Stavanger Drilling could not be settled here, as they could in Norway. While this Court is reluctant to deny the plaintiffs their choice of forum, it is equally reluctant to burden the State with a matter in which it has no interest and which has strong contacts with an available alternative forum. *Siemer v. Bahri Aviation, Inc.*, Del.Super., C.A. No. 82C–SE–103, Bifferato, J. (May 3, 1984) at 2. Moreover, when a plaintiff is a foreign citizen and is not suing in his or her home forum the presumption as to plaintiff's convenience in litigating in this forum is less reasonable, and thus the choice merits less deference. *Dawson v. Compagnie Des Bauxites de Guinee*, D.Del., 593 F.Supp. 20, 25, *aff'd*, 3d Cir., 746 F.2d 1466 (1984). Because of the difficulties with regard to obtaining evidence, live testimony, and the like, this is a case where the plaintiffs will not be overly burdened if required to prove their case in Norway, "but the defendant would be decidedly disadvantaged if forced to litigate in Delaware." *Siemer*, supra, at 2.

---

This Court concludes, therefore, that the American Jones Act, DOHSA, and general maritime law should not apply to this controversy, and that the case should be dismissed on the grounds of forum non conveniens.

IT IS SO ORDERED.