**Esther RUDISILL and Ernest Rudisill, Plaintiffs,**

v.

**SHERATON COPENHAGEN CORPORATION, a Delaware corporation, Defendant.**

**Civ. A. No. 91–071–JLL.**

United States District Court, D. Delaware.

March 22, 1993.

---

Robert Burton Coonin of Berkowitz, Schagrin, Coonin & Cooper, P.A., Wilmington, DE, for plaintiffs.

Roger D. Landon and Richard T. Wilson of Heckler & Cattie, Wilmington, DE, for defendant.

## OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

On February 11, 1991, plaintiffs, Esther and Ernest Rudisill, brought suit against defendant, Sheraton Copenhagen Corporation ("Sheraton Copenhagen"), for injuries allegedly sustained by Esther Rudisill on or about June 24, 1989, while she was a guest at defendant's hotel in Copenhagen, Denmark. (Docket Item ["D.I."] 1.) Esther Rudisill allegedly suffered a fracture of her left femur while showering in the bathroom of her room at the Sheraton Copenhagen hotel for which she seeks compensatory damages. *Id.* at 4. Her husband, Ernest Rudisill, seeks recovery for the loss of consortium caused by the injury to his wife. *Id.* at 4–5.

The complaint alleges that jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332 [1] because plaintiffs are citizens of the State of California, defendant Sheraton Copenhagen is a Delaware corporation, and the amount in controversy exceeds $50,-000. *Id.* at 1. The complaint further alleges that venue in this district is proper under 28 U.S.C. § 1391 [2] because Sheraton Copenhagen is a Delaware corporation. *Id.* at 2.

On March 1, 1991, Sheraton Copenhagen and the Rudisills stipulated to an extension of time for Sheraton Copenhagen to respond to the complaint, which the Court approved. (D.I. 6.) On March 18, 1991, Sheraton Copenhagen filed an answer denying all of the allegations in the complaint and asserting certain affirmative defenses. (D.I. 7.) Thereafter, limited discovery was taken by the parties. On September 30, 1991, Sheraton Copenhagen served requests for document production and interrogatories on the Rudisills, which was the last action of record advancing the prosecution of this case. (D.I. 10 & 11.)

The case remained dormant until January 13, 1993, when the Court entered an order pursuant to Local Rule 41.1 requiring plaintiffs' counsel to appear before the Court on January 27, 1993, and to show cause as to why the action should not be dismissed for want of prosecution.[3] (D.I. 11.) At the hearing to show cause, plaintiffs' counsel in-

---

**1.** Title 28 of the United States Code § 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—(1) citizens of different States; and (2) citizens of a State and citizens or subjects of a foreign state...." 28 U.S.C. § 1332(a)(1) & (2).

**2.** Title 28 of the United States Code § 1391(a) provides, *inter alia,* that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State...." 28 U.S.C. § 1391(a). Section 1391(c) states that "[f]or the purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is sub-

ject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

**3.** The district courts possess the inherent power to dismiss a case *sua sponte* for want of prosecution. *See Titus v. Mercedes Benz of North America,* 695 F.2d 746, 749 (3d Cir.1982); *see also Link v. Wabash Railroad Co.,* 370 U.S. 626, 629–32, 82 S.Ct. 1386, 1388–90, 8 L.Ed.2d 734 (1962). The District Court for the District of Delaware has exercised this inherent power in adopting Local Rule 41.1. In pertinent part, Local Rule 41.1 states that "[a]ll cases are reviewed periodically as to the status by the judge to whom they are assigned, and counsel shall be required to explain any delay ... [I]n each case pending wherein no action has been taken for a period of three months, the Court may, on its own motion ... and after reasonable notice, en-

formed the Court that an earlier parallel action between the parties had been pending in California State Court, which had the effect of informally staying the action before this Court. Plaintiffs' counsel also explained that the California action had been dismissed recently, and therefore the parallel litigation would no longer pose an obstacle to the prompt prosecution of the ·action before this Court. Accordingly, the Court determined that this action should not be dismissed for want of prosecution.

After the hearing, the Court issued a Rule 16 scheduling order setting deadlines for the completion of discovery and the filing of all pre-trial motions. (D.I. 12.) Within the timetable set forth in the Court's scheduling order, Sheraton Copenhagen filed the instant motion to dismiss plaintiffs' case on the grounds of *forum non conveniens.* (D.I. 13.)

## II. *STANDARD FOR DISMISSING AN ACTION FOR Forum Non Conveniens*

■ The doctrine of *forum non conveniens* permits the district court, in the exercise of its sound discretion, to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). Succinctly stated, when there are at least two courts which have jurisdiction over an action, the doctrine of *forum non conveniens* provides the criteria for the district court to consider in determining whether to hear the action or to dismiss the action because another court is the more convenient forum for the litigation of the action. *Dawson v. Compagnie Des Bauxites De Guinee,* 593 F.Supp. 20, 23 (D.Del.1984), *aff'd without opinion,* 746 F.2d 1466 (3d Cir. 1984). If the competing courts are U.S. federal trial courts, Title 28 of the United States

Code, section 1404(a) mitigates the harshness of the doctrine of *forum non conveniens* by allowing the district court to transfer the case "[f]or the convenience of [the] parties and witnesses, [and] in the interest of justice" to another federal trial court, instead of dismissing the action outright. 28 U.S.C. § 1404(a); *see DeMateos v. Texaco, Inc.,* 562 F.2d 895, 899 (3d Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978) (explaining that § 1404(a) "mitigates the possible harshness of the *forum non conveniens* rule by providing for transfer rather than dismissal").[4] However, when the more convenient forum is located in a foreign jurisdiction, the district court cannot transfer the action, and thus, "the traditional *forum non conveniens* remedy of dismissal is appropriate." *DeMateos,* 562 F.2d at 899; *see also Dawson,* 593 F.Supp. at 23; 1A, Pt.2 James Wm. Moore, *et al., Moore's Federal Practice* ¶ 0.204 at p. 2167 (1993).

■ When a party moves to dismiss an action on the grounds of *forum non conveniens,* that party, as an initial matter, bears the burden of demonstrating that an adequate alternative forum exists for the litigation of the case. *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 180 (3d Cir.1991). "Ordinarily, this requirement will be satisfied, when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). "[H]owever, if the alternative forum offers a clearly unsatisfactory remedy, it will nonetheless be inadequate. The latter situation arises, for instance, when the subject matter of the suit is not cognizable in the alternative forum." *Lacey,* 932 F.2d at 180. Yet, the mere fact that the law in the alternative forum is less favorable to plaintiff's action does not preclude dismissal on the grounds

---

ter an order dismissing such case unless good reason for the inaction is given." D.Del. LR 41.1.

**4.** Section 1404(a) "differs from the *forum non conveniens* doctrine in providing for a transfer to another court, rather than a dismissal of the action." 1A,· Pt. 2 James Wm. Moore, *et al., Moore's Federal Practice* ¶ 0.204 at p. 2165 (1993). In *Norwood v. Kirkpatrick,* 349 U.S. 29, 30–32, 75 S.Ct. 544, 545–47, 99 L.Ed. 789 (1955), the Supreme Court explained that in

adopting § 1404(a), Congress eliminated "[t]he harshest result of the application of the doctrine of *forum non conveniens,* dismissal of the action...." *Id.* at 32, 75 S.Ct. at 546. Moreover, the Court held that "Congress, by the term[s] 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than that required for a dismissal of the action under the doctrine of *forum non conveniens. Id.* at 32, 75 S.Ct. at 546.

of *forum non conveniens.* *Piper Aircraft Co.,* 454 U.S. at 250–52, 102 S.Ct. at 263–64.

■ Once the movant has satisfied the burden of demonstrating an adequate alternative forum, the movant must establish that the private interests of the litigants and the interests of the public are decidedly in favor of the dismissal for *forum non conveniens.* *Lacey,* 932 F.2d at 180. The factors which the district court must consider in determining whether the private interests of the litigants favor dismissal are: "[the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843. To determine whether the interests of the public favor dismissal, the district court must examine: "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

■ Finally, when passing upon a motion to dismiss for *forum non conveniens,* the Court must accord due deference to the plaintiff's choice of forum, especially when, as in the present case, the plaintiffs are U.S. citizens. *Id.* at 255–56 n. 23, 102 S.Ct. at 266 n. 23; *Lacey,* 932 F.2d at 179–80. "A citizen's forum choice should not be given dispositive weight, however. Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not automatically be barred when a plaintiff has filed suit in his home forum. As always,

if the balance of conveniences suggests that trial in the chosen forum would be necessarily burdensome for the defendant or the courts, dismissal is proper." *Piper Aircraft Co.,* 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23.[5]

## III. APPLICATION OF THE STANDARD TO SHERATON COPENHAGEN'S MOTION TO DISMISS FOR *Forum Non Conveniens*

### A. DENMARK PROVIDES AN ADEQUATE ALTERNATIVE FORUM

■ Sheraton Copenhagen contends that Denmark offers an adequate alternative forum for the litigation of this case. (D.I. 14 at pp. 7–8.) In support of its contention, Sheraton Copenhagen has proffered the affidavit of Ole Norregaard, a Danish attorney with thirty-three years of experience. (D.I. 14 at Exhibit ["Ex."] A.) According to Mr. Norregaard's affidavit, Danish law recognizes a cause of action for negligence and the Rudisills, by virtue of their U.S. citizenship, would not be barred from bringing such a cause of action in a Danish Court. *Id.* In addition, Mr. Norregaard's affidavit states that Danish law provides a five-year statute of limitations for tort actions and that a tort action may be brought in the circuit in which the tort was committed. *Id.* Furthermore, it is undisputed that Sheraton Copenhagen is amenable to process in Denmark. Accordingly, Sheraton Copenhagen has demonstrated that Denmark offers an adequate alternative forum for the litigation of this case.[6]

### B. BOTH THE PRIVATE INTERESTS OF THE LITIGANTS AND THE INTERESTS OF THE PUBLIC FAVOR DISMISSAL OF THIS ACTION FOR *Forum Non Conveniens*

#### 1. *PRIVATE INTERESTS OF THE LITIGANTS*

Consideration of the private interests of the litigants reveals that those interests are

5. The Third Circuit has explained that "the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one...." *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628, 634 (3d Cir.1989).

6. It should be noted that the plaintiffs do not take issue with Mr. Norregaard's affidavit, nor the defendant's contention that Denmark provides an adequate alternative forum. Instead, the plaintiffs argue that the private interests of the litigants and the interests of the public militate against the dismissal of this action for *forum non conveniens.*

decidedly in favor of dismissal of this action on the grounds of *forum non conveniens.* Virtually all of the evidence necessary for the prosecution of this case is located in Copenhagen, Denmark. The architect who designed the shower facilities in which Mrs. Rudisill allegedly slipped and fell resides in Denmark. Similarly, the attending physician who performed surgery on Mrs. Rudisill to set her broken leg, and the Sheraton Copenhagen employees who assisted Mrs. Rudisill after her injury, all reside in Denmark. Also, all documentary evidence concerning: (1) the design of the shower facilities; (2) the surgery undergone by Mrs. Rudisill; and (3) the Rudisills' stay in Sheraton Copenhagen's hotel, is located in Denmark. Thus, "the relative ease of access to the sources of proof" points decidedly in favor of dismissal for *forum non conveniens.*

Because nearly all of the witnesses reside in Denmark, except for the Rudisills, their adult daughter and son-in-law who accompanied them on their trip, and Mrs. Rudisill's local physician in California, this Court could not compel the attendance of the Danish witnesses to testify before this Court should this action proceed. Even if the Danish witnesses were willing to travel from Europe to testify in Delaware, the cost to both the plaintiffs and the defendant of supplying those witnesses with transportation and lodging would be extremely expensive. Moreover, it appears that the nature of this action would require both parties to retain experts to testify concerning the safety standards for the design and construction of hotel shower facilities in Denmark. Presumably, those experts would likewise reside in Denmark and the cost of bringing them to Delaware for trial would be unduly burdensome. Thus, because compulsory process would be unavailable to compel the testimony of unwilling Danish witnesses before this Court, and because the cost of obtaining the attendance of the willing Danish witnesses to testify before this Court would be exorbitant, these factors also point decidedly toward dismissal for *forum non conveniens.*

Finally, the site of the accident is located in Denmark. Given that one of plaintiffs' theories of recovery is that Sheraton Copenhagen's shower facilities were unreasonably dangerous, a view of the site by the fact finder may be desired by the parties or the trial court. A view of the site could only be obtained if the action were brought in Denmark. Accordingly, the possible need for a view of the site also points strongly in favor of dismissal for *forum non conveniens.*

The plaintiffs argue that a dismissal of this action would merely shift the expense of litigating this case to the plaintiffs, because the plaintiffs along with their witnesses would have to journey to Denmark. While the Court notes that the Rudisills might incur added expenses if they are forced to litigate in Denmark, this factor alone does not tip the balance of the private interests in favor of this Court's retention of jurisdiction over the case. First, the costs and difficulties which the Rudisills, who are California citizens, would incur in litigating this action in Delaware would not be demonstrably less than the costs and difficulties of litigating in Denmark. Second, and more importantly, the overwhelming part of the documentary and testimonial evidence concerning Mrs. Rudisill's unfortunate accident remains in Denmark. The Danish witnesses, whose testimony is essential for the litigation of this action, such as the architect of the hotel and the attending physician who performed surgery on Mrs. Rudisill, are likely to be unwilling witnesses whose appearance before this Court in Delaware could not be compelled. In addition, both the Rudisills and Sheraton Copenhagen would need to retain expert witnesses on Danish safety standards in the design and construction of shower facilities. Given these considerations, this Court concludes that the private interests of the litigants favor dismissal for *forum non conveniens.*

## 2. *INTERESTS OF THE PUBLIC*

Analysis of the public interests also weighs in favor of dismissal for *forum non conveniens.* Litigation of this case in Delaware would require this Court to apply Danish law, which would pose a substantial, if not

insurmountable, burden to the prompt resolution of this case.[7] District courts often encounter tremendous difficulty in applying the various laws of the several states when sitting in diversity. In the present case, the language barrier could further compound these difficulties. Moreover, Denmark is not a common-law jurisdiction such as Great Britain, whose legal regime and tradition are similar to our own. Rather, Denmark is a civil law jurisdiction. *See* Affidavit of Ole Norregaard, D.I. 14 at Ex. A. Quite simply, it would be more expedient for the Danish Courts to apply their own law than for this Court to hazard that task.

In addition, litigation of this case in Delaware would present an unfair burden on the citizens of the State of Delaware. The crux of this action centers around events which occurred in Denmark and the citizens of Delaware should not be required to determine the duty of care that a hotel, operating in Denmark, owes to its guests under Danish law. The only nexus between this litigation and this forum is that Sheraton Copenhagen is incorporated in Delaware. That nexus is not sufficient to impose jury duty upon citizens of the State of Delaware in this case. In short, this Court finds no reason why the present case, which calls for the application of Danish law, should be litigated in the District of Delaware. *See Dawson*, 593 F.Supp. at 28.

**IV. CONCLUSION**

For the foregoing reasons, the present case will be dismissed on the grounds of *forum non conveniens.* An order consistent with this opinion shall issue forthwith.

---

7. Since this Court is sitting in diversity, it must apply the choice of law rules of the state in which it sits, Delaware, to determine which jurisdiction's law governs the present case. *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In determining choice of law in tort actions, Delaware and has adopted the "most significant relationship test" of the Restatement (Second) of Conflicts §§ 6, 145, 146. *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 44–47 (Del.1991). Under the "most significant relationship test," six factors are considered in determining choice of law:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*Travelers Indemnity Co.*, 594 A.2d at 47. In applying the "most significant relationship test," Delaware courts place considerable emphasis on "the place where the injury occurred" and "the place where the conduct causing the injury occurred." *Id.* at 47. Moreover, the Delaware Supreme Court has directed Delaware courts to apply the law of the state where the injury occurred unless another state has a more significant relationship to the occurrence and the parties. *Id.* Application of the "most significant relationship test" to the present case indicates that Danish law would govern because both the injury and the allegedly tortious conduct occurred in Denmark.