Creighton E. MILLER, et al., Plaintiffs
Below, Appellants,

v.

PHILLIPS PETROLEUM COMPANY
NORWAY, a Delaware corporation,
Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 15, 1987.
Decided: Jan. 19, 1988.

Gregory A. Inskip (argued) and Peter M. Sieglaff, of Potter, Anderson & Corroon, Wilmington, Leonard C. Jaques, of The Jaques Admiralty Law Firm, P.C., Detroit, Mich., on behalf of appellants.

Bruce M. Stargatt (argued) and William D. Johnston, of Young, Conaway, Stargatt & Taylor, Wilmington, Kenneth E. Rogers, and Karen F. Brand, Houston, Tex., on behalf of appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice.

The appellants ("plaintiffs"), survivors and representatives of the seamen who were injured or killed when their semi-submersible drilling rig capsized in the North Sea, brought suit against Phillips Petroleum Company Norway ("Phillips Norway"), claiming relief under American federal law and foreign law. The Superior Court granted Phillips Norway's motion for summary judgment and dismissed the complaint after finding no subject matter juris-

diction and alternatively on the grounds of *forum non conveniens. Miller v. Phillips Petroleum Co. Norway,* Del.Super., 529 A.2d 263, 271 (1987). On appeal, it is argued that the Superior Court has jurisdiction over this controversy and that the suit should not have been dismissed on the basis of *forum non conveniens* principles.

We have concluded that, as a matter of federal law, the Superior Court does have concurrent jurisdiction over the subject matter of this controversy. However, we agree with the Superior Court's determination that the plaintiffs' claims are governed by Norwegian law. Therefore, we affirm the Superior Court's dismissal of the plaintiffs' claims because the plaintiffs have failed to state a claim upon which relief could be granted under federal law. We also affirm the dismissal by the Superior Court on the alternate ground of *forum non conveniens.*

### Facts

Defendant-appellee, Phillips Petroleum Company Norway, is a Delaware corporation. Phillips Norway is engaged in the production of oil and gas in the Greater Ekofisk Development (the "Ekofisk Field") in the North Sea. On July 15, 1976, Phillips Norway entered into a bareboat charter agreement[1] with Stavanger Drilling II A/S, a Norwegian corporation, with respect to the operation of the Alexander F. Kielland (the "Kielland").

The Kielland was a Norwegian flag vessel, owned by Stavanger Drilling and registered in Norway. It was designed and built in France as a semi-submersible drilling rig.[2] However, the Kielland had always been used as an accommodation rig for off-duty workers—a form of floating hotel. The Kielland never left the North Sea after its delivery to Stavanger Drilling. The crew for the Kielland was provided by Stavanger Drilling pursuant to a separate personnel and services agreement with Phillips Norway.[3]

The Kielland capsized during a storm on March 27, 1980, killing one hundred twenty-three of the two hundred twelve persons on board. The seamen on the Kielland at the time of the storm included citizens of Norway, the United Kingdom and the United States. The two Americans involved in this case (Messrs. Rolf Reme and Lars Hansen) were, in fact, dual nationals who resided in Norway at the time of their deaths. The Kielland capsized in the Norwegian sector of the North Sea.[4] The Norwegian government and the Stavanger, Norway, police have conducted official investigations into the Kielland's capsizing, and the City Court of Stavanger, Norway, has exercised jurisdiction over the accident.[5]

### Procedural Background

On September 24, 1980, Stavanger Drilling, as owner of the Kielland, and Phillips Norway filed a petition in the City Court of Stavanger, Norway, for limitation of liability pursuant to Norwegian law. In accordance with that law, they filed security in

---

1. A bareboat charter is a document by which the owner leases a vessel to a charterer without a crew or supplies. Anything less than a complete transfer of dominion is considered a time charter.

2. A semi-submersible drilling rig is a structure used for drilling oil wells which is anchored and, except during changes of drilling locations, remains stationary. Such a rig is self-propelled, but it is usually towed if it is to be moved any great distance.

3. Phillips Norway and Stavanger Drilling entered into an additional agreement for personnel and services pursuant to which Stavanger Drilling agreed to "man, navigate, operate and maintain the vessel necessary to make it seaworthy in all respects ... with full right to direct details thereof...." These agreements

were made in Norway and provide that they are governed by Norwegian law. Appendix to Appellee's Answering Brief at B51–B52, *Miller v. Phillips Petroleum Co. Norway,* Del.Supr., No. 179, 1987.

4. Phillips Norway owned over one-third of License 018, which covers the Ekofisk Field. The Kielland was stationed within this particular area of the Ekofisk Field.

5. The government's investigation, through a Commission of Enquiry appointed by Royal Decree, continued for more than a year. Over one hundred witnesses, both factual and expert, testified. The Commission's report was voluminous and written mostly in Norwegian.

the amount of approximately forty million United States dollars to pay all claims in those proceedings. It is represented to this Court that all proper persons were given notice to file their claims in that proceeding. This Court is also advised that Phillips Norway has complied with all requirements of Norwegian law in connection with the Norwegian litigation.

Applicable Norwegian law apparently provides that the City Court of Stavanger, Norway, has exclusive jurisdiction over all legal proceedings and/or claims of any kind or description which arise out of or in any way relate to the capsizing of the Kielland. It also appears that the failure to make a claim in the City Court of Stavanger precludes any claimant from making any claim in any other court or in any other jurisdiction. Finally, it is represented that claims may still be filed in the Norwegian action.

A majority of the Kielland survivors and of the estates of deceased seamen have been paid by Phillips Norway in full settlement of their claims. In fact, of the two hundred twelve people who were on board the Kielland when it capsized, two hundred two persons or their representatives executed general releases in favor of Phillips Norway in connection with the accident. These releases are all governed by Norwegian law. However, claims have been filed in the Norwegian proceedings by or on behalf of some persons who have given releases. Therefore, the binding nature of those releases, under Norwegian law, is a matter currently being contested in Norway.

Between January and May 1982, the plaintiffs in the present litigation initiated one hundred sixty-seven actions against Phillips Norway in the United States District Court for the Northern District for Ohio in connection with the Kielland's capsizing which is now the subject of this litigation. *All Alexander F. Kielland Litigants v. Phillips Petroleum Co., Inc.*, No.

82–31, slip op. (N.D.Ohio Feb. 14, 1983). The District Court dismissed the plaintiffs' claims against Phillips Norway for lack of personal jurisdiction. *Id.* at 12. The United States Court of Appeals for the Sixth Circuit affirmed this decision. 745 F.2d 55 (6th Cir.1984). The United States Supreme Court denied the plaintiffs' petition for a writ of certiorari. 471 U.S. 1055, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985).

On June 10, 1985, in the Superior Court of Delaware, the plaintiffs filed suit against Phillips Norway, essentially alleging the same causes of action that had been brought in the United States District Court. Specifically, the plaintiffs alleged four bases for their recovery: (1) the Jones Act, 46 U.S.C. § 688; (2) the Death on the High Seas Act, 46 U.S.C. §§ 761–768; (3) the general maritime law;[6] and (4) negligence and unseaworthiness under the applicable laws of Norway and/or the United Kingdom.

### *Subject Matter Jurisdiction*

Our analysis of this case logically begins with a review of the basis for hearing this litigation, concerning a maritime accident in the North Sea, in a Delaware Court. Corporations and individuals alike enter into contracts, commit torts, and deal in personal and real property. *McDermott Inc. v. Lewis*, Del.Supr., 531 A.2d 206, 214 (1987). Every Delaware corporation is accountable for such activities and subject to suit in a Delaware court of appropriate jurisdiction. 8 *Del.C.* § 122(2). In fact, every Delaware corporation must maintain a registered office in this State for the purpose of receiving service of process. 8 *Del.C.* §§ 131–136.

This litigation was commenced in the Superior Court of the State of Delaware, a court of general jurisdiction. Del. Const. art. IV, § 7; 10 *Del.C.* § 542. Phillips Norway is a Delaware corporation. However,

---

**6.** In particular, the plaintiffs alleged two causes of action under the general maritime law: (1) "breach of warranty to provide a reasonably seaworthy vessel"; and (2) "exemplary and punitive damages ... as a result of defendant acting with conscious indifference to the consequences of maintaining a vessel in grossly unseaworthy condition in wanton and willful disregard for the safety of Plaintiffs." Appendix to Appellants' Opening Brief at A36–A37, *Miller v. Phillips Petroleum Co. Norway*, Del.Supr., No. 179, 1987.

the fact that the Superior Court has general jurisdiction to consider claims against Delaware corporations does not *ipso facto* involve an application of Delaware law or a federal law of the United States. Choice of law decisions relating to corporate activities are usually determined after construing the facts of each transaction. *McDermott Inc. v. Lewis*, 531 A.2d at 214–15.

This transaction involved a maritime accident. The primary allegations for relief by the plaintiffs in this case were based upon federal law. Therefore, the first issue for the Superior Court to resolve was whether or not this maritime claim came within the exclusive original jurisdiction of the federal courts. 28 U.S.C. § 1333.[7] Various decisions by the United States Supreme Court have made it clear that federal admiralty jurisdiction is exclusive "only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." *Madruga v. Superior Court*, 346 U.S. 556, 560, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954). This is not such a case.

State courts are "competent" to adjudicate maritime causes of action in proceedings that are *in personam*. *Id.; Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986). Moreover, the decisions of the United States Supreme Court have specifically held that federal and state courts have *concurrent jurisdiction* over Death on the High Seas Act (DOHSA) and Jones Act cases such as the present one. *See, e.g., Offshore Logistics, Inc. v. Tallentire*, 106

S.Ct. at 2500; *Garrett v. Moore–McCormack Co., Inc.*, 317 U.S. 239, 243, 63 S.Ct. 246, 249–50, 87 L.Ed. 239 (1942); *Panama R.R. Co. v. Vasquez*, 271 U.S. 557, 560, 46 S.Ct. 596, 597, 70 L.Ed. 1085 (1926); *Engel v. Davenport*, 271 U.S. 33, 37, 46 S.Ct. 410, 412, 70 L.Ed. 813 (1926). Indeed, a state court's concurrent jurisdiction to hear a Jones Act claim is so carefully guarded that, once an action is begun in state court, it cannot be removed to federal court. 28 U.S.C. § 1445(a).

◼ The plaintiffs in this case properly asserted claims under federal law, and the Superior Court of Delaware had concurrent jurisdiction to hear them.[8] *Cf. Offshore Logistics, Inc. v. Tallentire*, 106 S.Ct. at 2500; *Madruga v. Superior Court*, 346 U.S. at 560–61, 74 S.Ct. at 301; *Garrett v. Moore–McCormack Co., Inc.*, 317 U.S. at 243, 63 S.Ct. at 249–50. "As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959) (quoting *Montana–Dakota Util. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951)). "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). If the Superior Court later determined "that the allegations in the complaint [did]

---

7. Article III, Section 2 of the United States Constitution extends the judicial power of federal courts to "all cases of admiralty and maritime Jurisdiction." Since the enactment of the Judiciary Act, United States District Courts have had jurisdiction over all civil cases of "admiralty or maritime jurisdiction." 28 U.S.C. § 1333. *See Madruga v. Superior Court*, 346 U.S. 556, 560–61, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954).

8. Plaintiffs asserted substantial claims that federal law afforded them various rights of recovery for this maritime accident. "Such assertion alone is sufficient to empower [a United States] District Court to assume jurisdiction over the

case and determine whether, in fact, [federal law] does provide the claimed rights." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959). The Superior Court of Delaware is likewise empowered by such assertion because state and federal courts have concurrent jurisdiction over this particular subject matter. *Cf. Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 2500, 91 L.Ed.2d 174 (1986); *Madruga v. Superior Court*, 346 U.S. 556, 560–61, 74 S.Ct. 298, 301, 98 L.Ed. 290 (1954); *Garrett v. Moore–McCormack Co., Inc.*, 317 U.S. 239, 243, 63 S.Ct. 246, 249–50, 87 L.Ed. 239 (1942).

not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Id.*[9]

Accordingly, we find that the Superior Court incorrectly grounded its dismissal of plaintiffs' federal law claims in this case on a lack of subject matter jurisdiction rather than, more appropriately, because the plaintiffs failed to state a claim under federal law. Nevertheless, despite that characterization by the Superior Court of its holding, the first issue on appeal remains the same: Did the Superior Court properly conclude that federal law did not apply to this maritime accident in the North Sea?

The United States Supreme Court "has specifically held that the Jones Act is to have a uniform application throughout the country unaffected by 'local views of common law rules.'" *Garrett v. Moore–McCormack Co., Inc.,* 317 U.S. at 244, 63 S.Ct. at 250 (quoting *Panama R.R. Co. v. Johnson,* 264 U.S. 375, 392, 44 S.Ct. 391, 396, 68 L.Ed. 748 (1924)). Although state courts have concurrent jurisdiction with the federal courts to try actions under the Jones Act, the "source of the governing law applied is in the national, not the state, governments." *Id.* at 245, 63 S.Ct. at 251. This so-called "reverse—*Erie*" doctrine also applies to claims under DOHSA and general maritime law. *Offshore Logistics, Inc. v. Tallentire,* 106 S.Ct. at 2495–98 (referring to *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). We are therefore called upon to review the federal choice of law principles as they were applied by the Superior Court to the facts in this case according to a national standard.

### Choice of Law Analysis

The United States Supreme Court has enunciated seven choice of law factors to be considered in deciding whether the Jones Act, Death on the High Seas Act, and/or general maritime law will be applied by a state or federal court in this country to a maritime accident: [10] (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or the domicile of the injured person; (4) the allegiance of the defendant shipowner; (5) the place of contract; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. *Lauritzen v. Larsen,* 345 U.S. 571, 583–92, 73 S.Ct. 921, 928–33, 97 L.Ed. 1254 (1953). The Court added an eighth factor, the shipowner's base of operations, in *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970).

The *Lauritzen–Rhoditis* choice of law test is not to be mechanically applied. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. at 308, 90 S.Ct. at 1733. The eight factors are not to be accorded equal weight, and the weight to be given to a specific factor will vary depending on the factual setting of a case. *Phillips v. Amoco Trinadad Oil Co.,* 632 F.2d 82, 85 (9th Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). The choice of law determination is subject to *de novo* review on appeal. *Diaz v. Humboldt,* 722 F.2d 1216,

---

9. *See also Rodriguez v. Flota Mercante Grancolombiana, S.A.,* 703 F.2d 1069, 1075–76 (9th Cir.) (Kennedy, J., concurring), *cert. denied,* 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983). Judge Kennedy wrote:

> I concur in the judgment, but write separately to call attention to a conceptual problem in these cases, namely, whether to characterize an unsuccessful Jones Act claim as lacking in subject matter jurisdiction or as failing to state a cause of action. The majority opts for the first category, and has precedent for it, since the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 308, [90 S.Ct. 1731, 1733, 26 L.Ed.2d 252] (1970), stated, "[o]f the seven factors (relating to Jones Act coverage) ... four are in favor of the shipowner and against *jurisdiction*" (Emphasis added.) I suggest, however, that this was only a passing and unguarded remark.
>
> The real question in these cases is not one of subject matter jurisdiction but simply whether or not there has been a failure to state a claim for relief under the Jones Act. *Id.*

10. Although *Lauritzen* involved a Jones Act claim, the same choice of law analysis that applies to claims brought under the Jones Act applies to claims brought under the Death on the High Seas Act, *DeMateos v. Texaco, Inc.,* 562 F.2d 895, 900 (3d Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978), and to claims under general maritime law. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959).

1218 (5th Cir.1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc);[11] *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983); *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d at 84. Accordingly, we must review the application of the *Lauritzen–Rhoditis* choice of law test by the Superior Court to the facts in this case.

*The Place of the Wrongful Act.* The *Lauritzen* Court placed little emphasis on the *lex loci delicti commissi* as a choice of law indicator, noting that "however sufficient for torts onshore, [it] is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen v. Larsen*, 345 U.S. at 583, 73 S.Ct. at 929. However, "unlike traditional maritime vessels, the operations of offshore drilling rigs tend to be conducted in a more permanent fashion off the coast of a foreign country, and the 'fortuitous circumstances' respecting the place of wrongful act and the place of contract that were given lesser significance in connection with traditional maritime ves-

sels in *Lauritzen* are not present in the offshore drilling rig context." *Bailey v. Dolphin Int'l, Inc.*, 697 F.2d 1268, 1277 (5th Cir.1983), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc).[12] "[S]uch factors as place of wrongful act, allegiance or domicile of the injured, and place of contract, which may be less substantial in the shipping context, tend to take on added significance" in the offshore fixed drilling rig context.[13]

The Superior Court found that since the Kielland was a fixed location vessel and not floating through "varities of legal authority," as was the ship in *Lauritzen*, the place of the wrongful act factor should be accorded more weight. *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 26. Noting that the accident occurred in the Norwegian sector of the North Sea, the Superior Court reached the conclusion that the place of the wrongful act provided no support for the application of federal law to this controversy. *Id.* We agree and further conclude that this factor favors the application of Norwegian law.[14]

**11.** In a recent opinion, the United States Court of Appeals for the Fifth Circuit overruled its prior Jones Act and general maritime caselaw which employed a modified *forum non conveniens* analysis. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc). Judges Garza, Johnson, Garwood, and Higginbotham did not join in this footnote. The Fifth Circuit determined that this caselaw was inconsistent with the dictates of *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). *In re Air Crash Disaster*, 821 F.2d at 1163 n. 25. Nevertheless, the Fifth Circuit did not overrule its interpretation and application of the *Lauritzen–Rhoditis* choice of law principles that were also contained in that caselaw. *Id.* Therefore, we rely on the interpretation of the *Lauritzen–Rhoditis* test enunciated in this Fifth Circuit caselaw. In applying Delaware law for the *forum non conveniens* analysis in the case before us, we continue to employ the modified analysis. We also note that the outcome of our decision would not change under the new approach adopted by the Fifth Circuit.

**12.** *See also Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1019 (5th Cir.1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), *overruled on other grounds, In re Air*

*Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc); *Zekic v. Reading & Bates Drilling Co.*, 536 F.Supp. 23, 25 (E.D.La.1981), *aff'd*, 680 F.2d 1107 (5th Cir.1982) (per curiam), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc).

**13.** *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d at 1019, *quoted in Cuevas v. Reading & Bates Corp.*, 770 F.2d 1371, 1379 (5th Cir.1985), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc). *See also Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289, 297 (5th Cir.1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc); *Bailey v. Dolphin Int'l., Inc.*, 697 F.2d 1268, 1275 (5th Cir.1983), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc).

**14.** *See Vaz Borralho v. Keydril Co.*, 696 F.2d 379 (5th Cir.1983) (Brazilian law applied to injury of Brazilian seamen on U.S. owned rig off coast of Brazil), *overruled on other grounds, In re Air*

*The Law of the Flag.* The *Lauritzen* Court placed its greatest emphasis on the law of the flag. The United States Supreme Court stated:

> Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag. Each state under international law may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it. Nationality is evidenced to the world by the ship's papers and its flag.

*Lauritzen v. Larsen,* 345 U.S. at 584, 73 S.Ct. at 929. The Kielland was registered in Norway and flew the flag of Norway.

■ The plaintiffs argue that as result of the bareboat charter agreement, Phillips Norway became the *pro hac vice* owner of the Kielland and that the Norwegian flag should be discounted as merely a flag of convenience. A vessel flies a flag of convenience when it has no significant actual operational contacts with the nation of foreign registry. *See id.* at 587–88, 73 S.Ct. at 930–31; *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. at 310, 90 S.Ct. at 1734. In assessing this argument, the Superior Court concluded that "[h]ere there is a company whose day-to-day operations were carried out in Norway, operating a vessel in the Norwegian sector of the North Sea, with the majority of people on board possessing Norwegian citizenship. ... Indeed, far from being a flag of convenience, a considerable argument could be made that Norway's flag was the most appropriate flag for the Kielland." *Miller v. Phillips Petroleum Co. Norway,* 529 A.2d at 267. The Superior Court concluded that this factor failed to support the application of federal law. *Id.* We agree and further

hold that it favors the application of Norwegian law.[15]

*The Allegiance or Domicile of the Injured Person.* Of the one hundred sixty-seven plaintiffs, only two claim to have American citizenship as part of their dual nationality status, Rolf Reme and Lars Hansen. However, these two plaintiffs were not domiciled in the United States but rather in Norway at the time of the accident. The United States Supreme Court remarked in *Lauritzen* that "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support." 345 U.S. at 586.

■ The Superior Court determined that this factor, therefore, "constitute[d] an American contact for two of the 167 plaintiffs." *Miller v. Phillips Petroleum Co. Norway,* 529 A.2d at 267. We agree with this conclusion. However, this factor does not *require* that the Jones Act, Death on the High Seas Act, and general maritime law, i.e., American law, be applied. *O'Neill v. Cunard White Star, Ltd.,* 160 F.2d 446, 448 (2d Cir.) ("[T]o make an American seaman a specially privileged individual in the crew of every foreign ship—enjoying a privilege incidentally which would certainly not be recognized in any foreign court—would be at once the occasion of ill will among those states whose nationals were affected, and in the long run of no value to the seamen themselves."), *cert. denied,* 332 U.S. 773, 68 S.Ct. 56, 92 L.Ed. 358 (1947). *See Tjonaman v. A/S Glittre,* 340 F.2d 290, 291 (2d Cir.) ("[T]hat he was an alien resident of the United States [is not] sufficient to endow him with rights which substantially all of his shipmates do not have—particularly when he had joined a Norwegian union and signed Norwegian shipping

---

*Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc); *Zekic v. Reading & Bates Drilling Co.,* 536 F.Supp. at 25 (Italian law applied to injury of Yugoslavian seamen on U.S. owned rig off coast of Italy).

**15.** The law of the flag is a factor which has a predictable outcome. In fact, "the flag that a ship flies may, at times, alone be sufficient" or

determinative of the choice of law analysis. *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 308, 90 S.Ct. 1731, 1733, 26 L.Ed.2d 252 (1970) (citing *Lauritzen v. Larsen,* 345 U.S. 571, 585–86, 73 S.Ct. 921, 929–30, 97 L.Ed. 1254 (1953)). However, the *weight* which this factor is afforded may be attenuated if the allegiance of the shipowner factor demonstrates that the flag is one of convenience. *See Lauritzen v. Larsen,* 345 U.S. at 587–88, 73 S.Ct. at 930–31.

articles."), *cert. denied,* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965).[16]

Thus, the fact that two out of one hundred sixty-seven plaintiffs are American does not mandate the application of American law. While acknowledging that the American citizenship of Rolf Reme and Lars Hansen was a factor in *their* favor, the Superior Court correctly concluded that it did not outweigh the other factors which favored the application of Norwegian law to this case.

*The Allegiance of the Defendant Shipowner.* In *Lauritzen,* the United States Supreme Court indicated that this factor is more important in cases involving a flag of convenience. When "[c]onfronted with such operations, ... courts [must press] beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them." 345 U.S. at 587, 73 S.Ct. at 931. We have previously found that the record supports the Superior Court's conclusion that the Kielland's use of the Norwegian flag was not a convenience for the purpose of getting around United States shipping regulations—the key concern of the Court in *Lauritzen. See id.*

The plaintiffs argue that Phillips Norway's signing of a bareboat charter made it the owner *pro hac vice,* which, in turn, required the application of American federal law. Under federal admiralty law, when an owner delivers "full possession and control" of his vessel to a charterer, the charterer is regarded as the owner *pro hac vice. Reed v. S.S. Yaka,* 373 U.S. 410, 412, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963). *See Blair v. United States Steel Corp.,* 444

F.2d 1390, 1391 (3d Cir.1971), *cert. denied,* 404 U.S. 1018, 92 S.Ct. 681, 30 L.Ed.2d 666 (1972). Therefore, a bareboat charterer is usually treated as such an owner. *Reed v. S.S. Yaka,* 373 U.S. at 412, 83 S.Ct. at 1351. The Superior Court agreed with this argument and held that the charter of the Kielland by Phillips Norway constituted a factor favoring the application of American law. *Miller v. Phillips Petroleum Co. Norway,* 529 A.2d at 268.

Phillips Norway acknowledges the validity of the foregoing principle, but it argues that anything less than a complete transfer results in a time or voyage charter party and does not create *pro hac vice* ownership status for the charterer. *Guzman v. Pichirilo,* 369 U.S. 698, 699–700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962). In particular, Phillips Norway contends that the personnel and services agreement between it and Stavanger Drilling prevented the "complete transfer" that normally occurs under a bareboat charter.

We do not interpret the holding in *Reed* to be that a bareboat charter *automatically* results in the application of American federal law in the choice of law analysis under *Lauritzen.* Instead, we find that *Reed* authorizes a court to look beyond the label of "bareboat charter" to determine whether, in fact, a complete transfer has occurred.[17] In the case before us, the transfer is far from complete.

The allegiance of the defendant shipowner under the choice of law analysis of *Lauritzen* is designed to prevent the use of a flag of convenience to thwart claims against the owner.[18] Here, the vessel was owned by a Norwegian corporation, operated under the Norwegian flag in Norwegian

**16.** *See also Smith v. Furness, Withy & Co., Ltd.,* 119 F.Supp. 369, 371 (S.D.N.Y.1953) (The court held that the Jones Act did not apply to a British national who resided in the United States and had applied for his first citizenship papers because the balance of contacts favored the application of British law.). *Cf. Alcoa S.S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147, 154–58 (2d Cir.1978) (en banc) (In the related area of *forum non conveniens,* the court held the fact that the plaintiff was American did not prevent dismissal of the case.), *cert. denied,* 449 U.S. 890, 101 S.Ct. 116, 66 L.Ed.2d 116 (1980).

**17.** It should be noted that *Reed* involved a proceeding upon libel *in rem* for the vessel's unseaworthiness. *Reed v. S.S. Yaka,* 373 U.S. 410, 411, 83 S.Ct. 1349, 1351, 10 L.Ed.2d 448 (1963).

**18.** That Stavanger Drilling is not a party to this action and is, therefore, not the *defendant* shipowner, as has been argued out by the plaintiffs, is not dispositive in this analysis. Emphasis is placed on the ownership of the vessel.

controlled waters, and manned by seamen who are mostly Norwegian. Phillips Norway, however it may be characterized for other purposes, cannot be viewed as the owner *pro hac vice.* Stavanger Drilling owned and controlled the vessel. *Cf. Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1518 (11th Cir.1985). Stavanger Drilling was not a mere shell corporation by which Phillips Norway could avoid the stringent shipping regulations of the United States. Thus, we conclude that the allegiance of the shipowner factor supports the application of Norwegian law.[19]

*The Place of Contract.* In *Lauritzen,* the Court stated that it did "not think the place of contract is a substantial influence in the choice between competing laws to govern a maritime tort." 345 U.S. at 589. It did not state that the *lex loci contractus* was not to be considered when a tort was involved. *See id.; Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. at 308, 90 S.Ct. at 1733. Furthermore, *Lauritzen* has been interpreted to allow the place of contract to play a greater role in the context of a drilling rig. *See Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015, 1019 (5th Cir.1981) ("[S]uch factors as ... place of contract, which may be less substantial in the shipping context, tend to take on added significance...."), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc); *Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1517, 1518 & n. 9 (11th Cir.1985); *Cuevas v. Reading & Bates Corp.,* 770 F.2d 1371, 1379 (5th Cir. 1985), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc).

■ In the present case, all of the plaintiffs signed employment contracts in Norway. The Superior Court determined that Norwegian law should be applied to the releases executed in Norway by two hundred two of the two hundred twelve seamen of the Kielland. *Miller v. Phillips Petroleum Co. Norway,* 529 A.2d at 268. *Cf. Fajardo v. Tidewater, Inc.,* 707 F.2d 858, 862 (5th Cir.1983), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc). The bareboat charter agreement and the personnel and services agreement are also subject to the application of Norwegian law. Thus, we find that the place of contract factor weighs in favor of the application of Norwegian law and should be accorded more weight than usual in a maritime tort.

■ *The Inaccessibility of the Foreign Forum. Lauritzen* involved a Danish seaman who was injured in an accident on a Danish ship in a harbor in Havana, Cuba. Denmark had taken jurisdiction over the incident. Since the plaintiff seaman lived in New York, the Supreme Court's Jones Act analysis included the practicability of his obtaining access to the Danish forum. It noted that although the plaintiff lived in New York, he was not "disadvantaged in obtaining his remedy under Danish law." *Lauritzen v. Larsen,* 345 U.S. at 590, 73 S.Ct. at 932.

The plaintiffs in this case argue, however, that even though the proceedings in Norway were and may be still open to them, they will be foreclosed from successfully participating because almost all of the injured persons and the representatives of deceased persons have given releases which bar further claims as a matter of Norwegian law. The argument that the Norwegian forum is "inaccessible" (within the meaning of *Lauritzen* ) because a Norwegian court will likely find the releases valid is not persuasive. The Superior Court found that "there is an available forum in Norway for the matters that are sought to be brought" before it. *Miller v. Phillips Petroleum Co. Norway,* 529 A.2d at 269. We agree with the Superior Court's conclusion and emphasize that the

---

**19.** For an example, involving this particular defendant, where a court determined Norwegian law controlled, *see Needham v. Phillips Petrole-* *um Co. of Norway,* 719 F.2d 1481, 1482–83 (10th Cir.1983).

plaintiffs were and/or are apparently able to conduct this litigation in Norway. This satisfies the major concern of the *Lauritzen* test: Are the plaintiffs able to litigate the case in the foreign country? *See Lauritzen v. Larsen*, 345 U.S. at 589–90, 73 S.Ct. at 931–32.

*The Law of the Forum.* In *Lauritzen*, the Court indicated that this factor is accorded little weight because the choice of forum is often fortuitous. 345 U.S. at 591. Furthermore, courts interpreting this factor have stated that this factor "is inapplicable when defendants are involuntarily made parties." *Sigalas v. Lido Maritime, Inc.*, 776 F.2d at 1518. *See Sosa v. M/V Lago Izabal*, 736 F.2d 1028, 1031 (5th Cir. 1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc); *Diaz v. Humboldt*, 722 F.2d at 1218. The Superior Court held that "the mere fact that the plaintiffs brought suit here does not constitute a factor in favor of the application of American law." *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 269. We agree with this conclusion.

*The Shipowner's Base of Operations.* In *Rhoditis*, the United States Supreme Court stated that "the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States." 398 U.S. at 310, 90 S.Ct. at 1734.

The plaintiffs argue that this factor weights heavily in favor of the application of American law. They base this argument on their interpretation of *Rhoditis* and on

the findings by the United States District Court in Ohio that the Board of Directors of Phillips Norway holds its annual meetings in Bartlesville, Oklahoma, and that the ultimate decision making of the company occurs there. *See All Alexander F. Kielland Litigants v. Phillips Petroleum Co., Inc.*, No. 82–31, slip op. at 10–11 & n. 23 (N.D.Ohio Feb. 14, 1983), *aff'd*, 745 F.2d 55 (6th Cir.1984), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). In particular, the plaintiffs argue that "wisdom and tradition dictate that when another court has thoroughly reviewed the same set of facts and reached a decision on a point of law based on those facts, great weight should be accorded that decision." [20] However, we note that the United States District Court dismissed the case for lack of *in personam* jurisdiction without relying upon this finding.[21] We are also aware of the fact that the United States Court of Appeals for the Tenth Circuit has affirmed another court's specific finding, in a separate case, that Phillips Norway's base of operations is *Norway*. *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d at 1482, 1484.

■ With this in mind, we undertake an independent analysis of the *Rhoditis* factor in this case. The case law interpreting this factor focuses on the place where the "day-to-day operational decisions" are made as the base of operations. *Bailey v. Dolphin Int'l, Inc.*, 697 F.2d at 1275 n. 22. "[I]t is the base from which the rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes." [22] *Id. See also*

**20.** Appellants' Opening Brief at 17 n. *, *Miller v. Phillips Petroleum Co. Norway*, Del.Supr., No. 179, 1987.

**21.** Indeed, in its opinion the District Court stated that "[f]or the purposes of defendants' motions, it makes no difference whether Phillips Norway's principal place of business is in Oklahoma or Norway." *All Alexander F. Kielland Litigants v. Phillips Petroleum Co., Inc.*, No. 82-31, slip op. at 2 & n. 4 (N.D.Ohio Feb. 14, 1983), *aff'd*, 745 F.2d 55 (6th Cir.1984), *cert. denied*, 471 U.S. 1055, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985).

**22.** The United States Court of Appeals for the Fifth Circuit continued, stating that "even if we assumed that the [ship] was a U.S. flag vessel, that it was owned by a U.S. corporation and that the ultimate base of operations was in the United States, in view of the more substantial contacts with Indonesia, Singapore, and the Phillipines, *American law would not apply where, as here, the day-to-day operational decisions were made in Singapore and Indonesia.*" *Bailey v. Dolphin Int'l, Inc.*, 697 F.2d at 1275 n. 22 (emphasis added).

*Cuevas v. Reading & Bates Corp.*, 770 F.2d at 1379; *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d at 1482, 1484. The day-to-day operations of the Ekofisk Field development were conducted from Phillips Norway's office in Norway. The Kielland was supervised by a Norwegian company, the crew consisted primarily of Norwegians, and the Norwegian government regulates the drilling industry in this area of the North Sea. The Superior Court determined that the shipowner's base of operations did "not constitute a substantial contact with the United States." *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 269. We agree and further find that this factor supports the application of Norwegian law.

### Conclusion of the Choice of Law Analysis

This Court has acknowledged that the *Lauritzen–Rhoditis* test is not to be mechanically applied and that the weight given to the various individual factors will vary depending on the particular facts of each case. *See Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. at 308, 90 S.Ct. at 1733; *Phillips v. Amoco Trinadad Oil Co.*, 632 F.2d at 85. We are also cognizant that in the context of a semi-submersible drilling rig some factors may receive different weight than they would in a traditional maritime context. *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d at 1019.

The case before this Court involves the Kielland, a semi-submersible drilling rig, which capsized in the Norwegian sector of the North Sea. This was a Norwegian flag vessel, which was owned and operated by a Norwegian company, Stavanger Drilling. We have found that defendant Phillips Norway's base of operations is in Norway and that the Norwegian courts are or were available to the plaintiffs. The only one of the *Lauritzen–Rhoditis* factors which favors the application of American federal law is the allegiance of two out of

the one hundred sixty-seven plaintiffs to the United States. However, even they are dual nationals who were domiciled in Norway. Therefore, we find that an application of the *Lauritzen–Rhoditis* test to the facts of this case leads to the conclusion that Norwegian law governs this incident.

The Superior Court also concluded that its analysis of the *Lauritzen–Rhoditis* factors did not favor the application of American federal law and called the controversy a "Norwegian case." *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 269. It then stated that it had "determined under the 'choice of law' test that [it] should not assume jurisdiction over the case...." *Id.* Although we agree with the conclusion that Norwegian law controls this case, we reiterate that the choice of law analysis pointing to the application of foreign law did not divest the Superior Court of its concurrent subject matter jurisdiction. Instead, the Superior Court was presented with a situation where the plaintiffs failed to state a claim under American federal law upon which relief could be granted. This Court affirms the dismissal of the plaintiffs' claims albeit on the merits and for the reasons previously stated.

### Forum Non Conveniens Analysis

Even though it determined that it lacked subject matter jurisdiction over this controversy, the Superior Court went on to consider Phillips Norway's independent and alternative motion for a dismissal on *forum non conveniens* grounds. *Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 270.[23]

We have concluded that plaintiffs' American federal law claims should have been dismissed for failing to state a cause of action, leaving only their alternative claims under Norwegian law to be considered. However, assuming *arguendo* that the Superior Court had found that American federal law applied to the plaintiffs' claims, it

23. Although we affirm the Superior Court's *forum non conveniens* analysis, as a general proposition a court cannot dismiss a case on *forum non conveniens* grounds once it has determined that it lacks subject matter jurisdiction. *See*

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

was still empowered to exercise its discretion to dismiss the suit under the doctrine of *forum non conveniens*. Notwithstanding the existence of rights under federal law, each state, "according to its own local law," is free "to decide the availability of the principle of *forum non conveniens*." *Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. 1, 5, 71 S.Ct. 1, 3, 95 L.Ed. 3 (1950).

This Court has prescribed six factors to be considered in determining whether a case should be dismissed on *forum non conveniens* grounds: (1) whether Delaware law applies; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the possibility of viewing the premises; (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and (6) all other practical considerations which would make the trial easy, expeditious and inexpensive. *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425, 427 (1967). *See also General Foods Corp. v. Cryo–Maid, Inc.*, Del.Supr., 198 A.2d 681, 684 (1964).[24]

▮▮▮▮ "A motion to dismiss on the ground of *forum non conveniens* is addressed to the discretion of the trial court." *Parvin v. Kaufmann*, 236 A.2d at 427. In deciding whether the Superior Court abused its discretion in granting the motion to dismiss on *forum non conveniens* grounds, this Court "can only examine the record to determine ... whether or not there could be a reasonable difference of view upon the propriety of [the] act. If there can be such a different reasonable view, then we have no course but to af-

firm...." *General Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d at 684. In dismissing plaintiffs' Norwegian law claims, the Superior Court recognized and applied the proper *forum non conveniens* considerations to the facts in this case. *See Miller v. Phillips Petroleum Co. Norway*, 529 A.2d at 270–71. Those facts would remain unchanged even if American federal law did apply to the plaintiffs' claims. We find no abuse of discretion in granting the defendant's motion for dismissal on *forum non conveniens* grounds.

### Conclusion

The Superior Court's determination that this case is controlled by Norwegian law is supported by the applicable law and the facts in the record. Therefore, the dismissal of the plaintiffs' American federal law claims is affirmed on the ground that they failed to state a cause of action upon which relief could be granted.

The decision of the Superior Court that Delaware is an inconvenient forum for this litigation is also affirmed and provides an independent and adequate alternative basis for the dismissal of the plaintiffs' claims in this case. *Cf. Missouri ex rel. Southern Ry. Co. v. Mayfield*, 340 U.S. at 4–5, 71 S.Ct. at 2–3.

---

**24.** "An action may not be dismissed upon bare allegations of inconvenience without an adequate showing of particulars of the hardships relied upon." *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425, 428 (1967). The defendant bears the burden of showing inconvenience and hardship in such a way that "the combination and weight of the factors to be considered balance overwhelmingly in favor of the defendant." *Kolber v. Holyoke Shares, Inc.*, Del.Supr. 213

A.2d 444, 447 (1965). *Accord States Marine Lines v. Domingo*, Del.Supr., 269 A.2d 223, 225 (1970); *Parvin v. Kaufmann*, 236 A.2d at 427; *Texas City Refining, Inc. v. Grand Bahama Petroleum Co., Ltd.*, Del.Supr., 347 A.2d 657, 658 (1975) (per curiam). *Cf. ANR Pipeline Co. v. Shell Oil Co.*, 525 A.2d 991, 992 (1987) (per curiam); *Moore Gulf, Inc. v. Ewing*, Del.Supr., 269 A.2d 51, 52 (1970).